Barbara ROSS et al., Plaintiffs, Individually and as representatives of a class,

v.

COMMUNITY SERVICES, INC., et al., Defendants.

Civ. No. H–75–506.

United States District Court, D. Maryland.

Dec. 31, 1975.

Lawrence B. Coshnear, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Mark K. Joseph, Thomas N. Biddison, Jr., and Gallagher, Evelius & Jones, Baltimore, Md., for private defendants.

Jervis S. Finney, U. S. Atty., and Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., Paul T. Michael, Stanley D. Rose and David Epstein, Dept. of Justice, Washington, D.C., for federal defendants.

ALEXANDER HARVEY, II, District Judge:

In *Ross v. Community Services, Inc.*, 396 F.Supp. 278 (D.Md.1975), this Court ruled that plaintiffs, who are tenants at a federally-assisted housing project, were entitled to a preliminary injunction during the pendency of this case. Reference is made to that Opinion for a full discussion of the background of this litigation and of the questions presented. In its Order entered herein on May 19, 1975, this Court (1) certified a class of tenants to be represented by plaintiffs, (2) directed the federal

defendants to make certain determinations required by Section 236 of the National Housing Act, and (3) required that the plaintiffs-tenants and defendant HUD should meanwhile each pay defendant Uplands, the landlord, one-half of the rent increase which had become effective May 1, 1975.[1]

In compliance with that Order, the determinations in question have been made by the federal defendants, and affidavits reflecting such determinations have been filed herein. Presently before the Court are cross motions for summary judgment, together with supporting memoranda, filed by the plaintiffs and by the federal defendants.[2] Having agreed that the case is properly at issue for final determination, the parties have further agreed to the entry of an Interim Order[3] adjusting the payments to be made by the federal defendant to Uplands as an operating subsidy in accordance with the determinations made by HUD.

In its Opinion in the *Ross* case, this Court considered the Uplands rent increase of May 1, 1975 in the light of Section 212 of the Housing and Community Development Act of 1974, 12 U.S.C. § 1715z-1, which was enacted on August 22, 1974 and which amended Section 236 of the National Housing Act. Plaintiffs' contention that they should not be required to pay any part of such rent increase was rejected, this Court having found that the increased rentals in question were justified by the landlord's increased costs of operation and that the application for the increases had properly been approved by HUD.[4] 396 F. Supp. at 282–83. This Court then discussed in detail the applicability to this case of amendments to Section 236(f)

and (g) of the National Housing Act, which authorized the Secretary of the Department of Housing and Urban Development to make certain assistance payments or operating subsidies to Section 236 project owners in order to cover a part of rent increases resulting from increased utility costs and property taxes exceeding a project's operating expense level.

In opposing plaintiffs' motion for a preliminary injunction, the federal defendants took the position that HUD had the discretion, under Subsections (f)(3) and (g) of Section 236, to refuse to make any operating subsidy payments to any project owner, including the defendant Uplands. This Court disagreed. 396 F.Supp. at 285–87. In entering a preliminary injunction, this Court ordered the Secretary to establish an initial operating expense level for the Uplands project and then to determine whether this project qualified for an operating subsidy under the statute. If the project and the rent increases in question were found to satisfy the requirements of the law and if there were no other valid reason why this project should not receive the operating subsidy, this Court indicated that HUD should pay it, provided that the balance in the reserve funds set aside for such payments was sufficient to make the payment in question. 396 F.Supp. at 287.

As required by this Court, various determinations have now been made by HUD officials and have been made a part of the record in this case. Affidavits have been filed establishing an initial operating expense level for the Uplands apartment complex, as required by Section 236(f)(3).[5] Neither the plain-

---

1. The federal defendants filed a notice of appeal and a motion to stay the effect of that Order pending appeal. When the motion for a stay pending appeal was denied by this Court, the federal defendants dismissed their appeal pursuant to Rule 42(a) of the Federal Rules of Appellate Procedure.

2. The defendant Uplands has taken no position concerning the merits of the case.

3. Such Order was filed on September 24, 1975.

4. In now moving for summary judgment, plaintiffs have not challenged that ruling.

5. The affidavits were submitted by Fred W. Pfaender, Director of HUD's Office of Loan Management.

tiffs nor the private defendants have questioned the correctness of the calculations that have now been made by HUD. The amount of the monthly operating subsidy payable to the private defendants under Section 236 has thus been agreed upon by all parties and has in fact been incorporated in the Interim Order which is to control payments to Uplands until a final decision has been made concerning the merits of this case.[6]

In moving for summary judgment, the federal defendants make essentially the same contentions previously rejected by this Court in the *Ross* opinion.[7] These defendants do not claim that any reason exists why the Uplands apartment complex would not qualify for assistance payments under Subsections (f)(3) and (g) of Section 236. Indeed, HUD has previously approved the rent increase of May 1, 1975. The undisputed facts show that increases in the cost of utilities and real property taxes which have caused most of the increase in the rents now charged by Uplands to the plaintiffs are reasonable. No contention has been made by HUD that the increased costs are not comparable to increases affecting other rental projects in the community. In spite of these facts indicating that the Uplands project is eligible for the subsidy payments in question, the federal defendants have taken the position, as they did earlier, that Congress, in amending Section 236 in 1974, gave HUD absolute discretion to decline to make any subsidy payments to any project, whether it would qualify for such payments or not. For the reasons previously stated in *Ross v. Community Services, Inc., supra,* this Court concludes that there is no merit in the position taken by the federal defendants. Accordingly, plaintiffs' motion for summary judgment will be granted and the

federal defendants' motion for summary judgment will be denied.

In *Ross,* this Court first discussed national housing policy as reflected in the Housing Act of 1949 and the Housing and Urban Development Act of 1968 and then examined the legislative history which led to the enactment of Section 212 of the 1974 Housing Act. The conclusion was reached that Congress never intended to give HUD the discretion to decide as a matter of policy that no subsidy payments would be made to any project, whether it qualified under the statute or not. When the conclusions and findings in *Ross* are reviewed in the light of federal defendants' pending motion for summary judgment and supporting brief, this Court concludes that its earlier determinations are sound and require that plaintiffs be granted final relief in this case.

The federal defendants' reading of the statute miscomprehends the discretion conferred on HUD by Congress in amending Section 236(f) and (g). These defendants argue that Congress vested absolute discretion in the Secretary with respect to operating subsidies. Undoubtedly, the Secretary under Section 236(f)(3) has the discretion to determine whether a particular increase in the cost of utilities or real estate taxes is reasonable and is comparable to cost increases affecting other rental projects in the community. But Congress hardly intended to give the Secretary blanket discretion to frustrate Congressional policy and in effect adopt a different policy which the Secretary might believe would result in more comprehensive and more equitable results. Congress would hardly have included in this legislation provisions requiring the Secretary to establish an initial operating expense level for a project and requiring the Secretary to thereafter determine whether

---

6. The Interim Order of September 24, 1975 did modify HUD's proposals slightly so as to permit a more equitable distribution of the operating subsidy among the tenants.

7. The federal defendants have not challenged this Court's rulings that jurisdiction exists under 28 U.S.C. § 1361 and/or under 28 U. S.C. § 1337 and that plaintiffs have standing to bring this action. *See* 396 F.Supp. at 282.

such project qualified for the subsidy if, after those determinations had been made, the Secretary was empowered to decide that it would not in any event make the payments to a qualified recipient.

As this Court said in *Ross, supra* at page 286:

It is not HUD's prerogative to disagree with Congressional policy and refuse to implement it. An administrative agency is required to effectuate, not ignore, Congressional intent, whether the agency agrees with Congress or not. The judicial branch has the function of requiring the executive (or administrative) branch to comply with requirements set up by the legislative branch. *National Automatic Laundry & Cleaning Council v. Shultz*, 143 U.S.App.D.C. 274, 443 F.2d 689, 695 (1971).

■ On the record here, this Court finds that HUD has abused the discretion conferred upon it under Section 236(f)(3) and (g) in declining to make the subsidy payments requested to Uplands on behalf of the plaintiffs. The facts show that this project qualifies for the payments in question and that the balance in the reserve funds is sufficient for the payments in question. No reason has been advanced by HUD in support of its decision other than its disagreement with the policy behind the legislation.

■ It is further argued that this Court's construction of Section 236 does not give proper deference or weight to the administrative interpretation which HUD has given the statute. *See Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). The federal defendants also contend that Congress has approved HUD's interpretation of Section 236 by failing to take corrective action after having been informed of the Secretary's intent not to implement the operating subsidy program.

■ But the statute in question is a very recent enactment. Congress passed the 1974 Housing Act on August 22, 1974, and this suit was filed some eight months later. Such an interval is hardly sufficient to show a long-standing administrative interpretation which might tend to establish the validity of a particular construction. In any event, a court should accord no weight to an agency interpretation that is not "consistent with the congressional purpose," *Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), or where there are " 'compelling indications that it is wrong.' " *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 94–95, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973). As discussed more fully in the *Ross* opinion, the clearly expressed Congressional purpose was to establish a program designed to provide assistance to low income tenants who were required to pay increased rents justifiably resulting from a landlord's increased costs. HUD was empowered to administer the program but was not authorized to refuse to implement the program in any way. There are compelling indications in this case that HUD's interpretation of the statute is wrong.

Nor would the failure of Congress to act in the brief period since these amendments became law suggest that Congress has concurred in the administrative interpretation which HUD has accorded this statute. As the Court observed in *Pennsylvania v. Lynn*, 163 U.S.App.D.C. 288, 501 F.2d 848, 861 (1974), Congress "cannot be put to the necessity of acting twice before it is taken to mean what it said in duly enacted legislation."

■ The federal defendants have also renewed the argument rejected in *Ross* that the Secretary has no available contract authority to make the subsidy payments in question. *See* 396 F.Supp. at 287. The affidavit relied upon, that of Mr. Alfred J. Kliman, Director of HUD's Office of Budget, does not support such contention. As amended by

the 1974 Housing Act, Section 236(g) specifically establishes "a reserve fund to be used by the Secretary to make additional assistance payments" under the operating subsidy program. Such fund "shall be available" for the purpose of making the payments in question. By the terms of this statute, Congress has provided the Secretary with the necessary contract authority for payment of operating subsidies. The reserve fund has been made unconditionally available for the payments in question. HUD seeks to avoid this result by arguing that the availability of the reserve fund established by Section 236(g) is restricted by the requirements of Section 236(i). Before 1974, use of the reserve fund was expressly made "subject to limits approved in appropriation Acts pursuant to subsection (i) of this section." See Section 236(g), 12 U.S.C.A. § 1715z-1(g) (1969 Ed.). But Section 212(3) of the 1974 Housing Act removed this restriction with respect to operating subsidies and made these sums immediately available for payment. The reserve fund, which is an accumulation of "all rental charges collected in excess of the basic rental charges" for a Section 236 project, presently shows a balance of approximately $31 million. This amount is presently on hand and available to the Secretary for the payment of operating subsidies, and no further release of contract authority by Congress is necessary for disbursement of portions of this fund to plaintiffs.

Finally, the federal defendants argue that the inadequacy of the present reserve fund supports the Secretary's decision not to implement the operating subsidy program. It is claimed that the $31 million reserve fund is not sufficient for the program because $51.4 million would be needed to cover the estimated costs of operating subsidies for all Section 236 projects which might qualify. The simple answer to this contention is that there is no indication that all Section 236 projects would qualify for an operating subsidy or have even applied for one. This Court has before it only the claims of the tenants at this one project. Speculation as to what might occur if other applications are filed at some time in the future would hardly furnish grounds for defeating the present rights of these plaintiffs. If, after implementation of the operating subsidy program, the approval of future applications would deplete the amount of the reserve fund, then, as the Supreme Court observed in *Morton v. Ruiz, supra,* 415 U.S. at 230, 94 S.Ct. at 1072 (1974), the Secretary may "create reasonable classifications and eligibility requirements in order to allocate the limited funds available to [her] for this purpose." However, the mere possibility that the reserve fund may prove insufficient at some time in the future is not justification for the Secretary's refusal to make any payments at all to Uplands at this time.

For the reasons stated, plaintiffs' motion for summary judgment is granted, and the federal defendants' motion for summary judgment is denied. Plaintiffs and their class are entitled to a permanent injunction requiring the federal defendants to make monthly subsidy payments to the defendant Uplands in the amounts previously agreed upon. Counsel are directed to confer and submit an appropriate Final Order.