Joyce HAAS, etc., Plaintiff-Appellees,

v.

Sirrouko HOWARD et al.,
Defendant-Appellant.

Appeal of OXBOW ASSOCIATES
et al., Defendant.

Joyce HAAS et. al., Appellees,

v.

Patricia R. HARRIS, Secretary of
Housing and Urban Development,
et al., Appellants.

Nos. 77–1439, 77–1481.

United States Court of Appeals,
First Circuit.

Argued April 5, 1978.

Decided June 21, 1978.

---

John F. Cordes, Atty., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Lincoln C. Almond, U. S. Atty., Providence, R. I., and Robert E. Kopp, Atty., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., were on brief, for Federal appellants.

Richard M. Peirce, Providence, R. I., with whom Roberts & Willey Incorporated, Providence, R. I., was on brief, for appellants Oxbow Associates, et al.

Betsy E. Grossman, Newport, R. I., with whom Robert M. Sabel, Newport, R. I., was on brief, for appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is yet another case spawned by a proposed rent increase in a "section 236" federally subsidized housing project.[1] There are three parties involved: (1) the tenants, plaintiffs-appellees; (2) the Secretary and officials (the Secretary) of the Department of Housing and Urban Development (HUD), defendants-appellants; and (3) the landlords, defendants-appellants. The landlords sought a rent increase which had to be and was approved by HUD. The tenants then brought this action in the district court seeking to enjoin the rent increase. The district court issued a preliminary injunction providing *inter alia*:

---

1. The district court's opinion is reported at 436 F.Supp. 279 (D.R.I.1977).

Defendants are restrained and enjoined from assessing upon any member of Plaintiffs' class any portion of the rent increase approved on or about March 29, 1977, which is attributable to increases in the costs of local property taxes and utilities.

Until further Order of this Court, Defendants are restrained and enjoined from assessing upon members of Plaintiffs' class any portion of any future rent increases, over initial operating expense levels, in the costs of local property taxes and utilities, which will result in their paying in excess of their adjusted monthly income for rent.

The district court also stayed further proceedings relative to the payments by tenants of rents in excess of 30% of their income pending decision by the United States Supreme Court of two pending cases, *infra* at 658, involving similar issues.

The issue is the validity of the preliminary injunction effectively prohibiting any rent increase.

A capsulized history of the inflation plagued National Housing Act is necessary. The purpose of the Act is to provide adequate housing to "families with incomes so low that they could not otherwise decently house themselves . . . ." 12 U.S.C. § 1701t. To this end, certain subsidy payments are authorized. Section 236 of the Act, 12 U.S.C. § 1715z–1, authorizes the Secretary to make interest reduction payments to mortgagees and insure the mortgages of the landlords. 12 U.S.C. § 1715z–1(a) and (j). This so-called "production subsidy" is intended to lower the rents of the tenants by lowering the operating costs of the landlords. The landlords are strictly regulated in the rents they may charge and the profits they can make. 12 U.S.C. § 1715z–1(e) and (f)(1) and (3); 24 C.F.R. § 236.55. Because of the sharp increase in utility costs and local property taxes, Congress added an "operating subsidy" in 1974 which provides for offsetting payments to the landlords to prevent such costs from being passed on to the tenants. This was accomplished by the addition of section

236(f)(3) to the Act and the amendment of section 236(g), 12 U.S.C. § 1715z–1(f)(3) and (g).

The first question is whether the stay order of the Supreme Court in *Underwood v. Hills*, 429 U.S. 892, 97 S.Ct. 250, 50 L.Ed.2d 175 (1976), precludes the relief granted by the district court. *Underwood v. Hills*, 414 F.Supp. 526 (D.D.C.1976), *appeal pending* (D.C.Cir.), was a nationwide class action brought by tenants in federally subsidized housing projects asking that the Secretary be ordered to pay the "operating subsidies" authorized by Congress in section 236(f)(3) and (g) of the Act, 12 U.S.C. § 1715z–1(f)(3) and (g). Appellees concede and the district court found that the nationwide class of tenants certified in *Underwood* was inclusive of the tenants in this case. The district court in *Underwood* held that "[t]he operating subsidy program established by Sections 236(f)(3) and (g), 12 U.S.C. § 1715z–1(f)(3) and (g), is a mandatory program," *id.* at 531, and that:

Plaintiffs are also entitled to a writ of mandamus and a permanent injunction ordering the Secretary, her agents, officers, servants, employees, attorneys and all persons in active concert or participation with her to establish initial operating expense levels for all Section 236 projects nationwide, to determine the increase in the cost of local property taxes and utilities for such projects, to determine whether such increases have been reasonable and comparable to cost increases in the relevant community, and to make and contract to make operating subsidy payments for the benefit of plaintiffs from February 18, 1975, forward and to continue to make such payments periodically as the availability of funds permits. *Id.* at 532.

The *Underwood* order was issued June 6, 1976, and a stay of judgment was issued by the Supreme Court on October 18, 1976, which provided: "Application for stay of judgment of the United States District Court for the District of Columbia, entered June 8, 1976, presented to THE CHIEF

JUSTICE, and by him referred to the Court, granted pending further order of the Court." *Underwood v. Hills, supra,* 429 U.S. at 892, 97 S.Ct. at 250. The court below found that the Stay Order did not bar this action on two grounds: (1) because the question involved here was not before the Supreme Court, and (2) the ordinary principles of *res judicata* did not apply to these plaintiffs, even though they were members of the *Underwood* class. We disagree on both counts.

The district court found on examination of the *Underwood* papers "that the *Underwood* plaintiffs argued two theories before Judge Pratt: 1) that the Secretary was obliged to implement the operating subsidy program and 2) that the Secretary was not permitted to pass along rent increases to tenants without taking into account the operating subsidies that she was required to implement." *Haas v. Harris,* 436 F.Supp. 279, 281 (D.R.I.1977).

It went on to find:

The *Underwood* plaintiffs therefore had open to them a second line of attack: Judge Pratt's order, stayed by the Supreme Court, dealt only with the issue of whether the Secretary should pay the operating subsidy; it left undecided the issue of who—as between landlord and tenant—should bear the burden of the rent increase while the subsidy question awaited final resolution. There is no indication that the Supreme Court was presented with, or purported to decide, this question.

*Haas v. Harris,* 436 F.Supp. at 281.

■ We first of all point out that, regardless of what the *Underwood* papers

might disclose, Judge Pratt's opinion does not mention two theories. His findings and rulings are clear and complete. There is no suggestion that the judgment covered only a part of plaintiffs' claims. It is the contour of Judge Pratt's opinion and order that control, not the papers filed.

Secondly and more importantly, we do not view the two questions as distinct and separate; although stated differently, they cover essentially the same issue. It is obvious that, if no subsidies are paid and expenses exceed income, rents will either have to go up or the landlords will go broke. The district court did acknowledge in a footnote that the *Underwood* plaintiffs argued to the Supreme Court that it would be burdensome to the tenants to pay the rent increases that would result from a stay. *Haas v. Harris, supra,* 436 F.Supp. at 281 n.1. We cannot assume that the Supreme Court was oblivious of the stakes involved. Nor can we assume that the Secretary had not foreseen the results of her position in *Underwood.*

■ Even if, however, we assume that there were two separate theories available to plaintiffs in *Underwood* and only one was advanced, we find that the principles of *res judicata* bar this action. The district court acknowledged that "this failure to exhaust alternative remedial possibilities would bar subsequent litigation on the same issue," *Haas v. Harris, supra,* 436 F.Supp. at 282, but found that plaintiffs here had not been adequately represented in *Underwood* and, therefore, the principles of *res judicata* did not apply to them.[2]

2. We do not find the cases cited by the district court persuasive. *Gonzales v. Cassidy,* 474 F.2d 67, 75 (5th Cir. 1973), focused on: "The narrow question, therefore, is whether Gaytan's failure to appeal this order, which denied retroactive relief to all members of the class except Gaytan, constitutes inadequate representation of the class so that they are not bound by the judgment." The holding was that the failure to appeal under the circumstances of the case rendered the representation inadequate. There are two reasons why the class in *Gonzales* was not bound by one individual's failure to appeal. First, his claims were re-

solved so as to give him retroactive relief, whereas the rights of the rest of the class were not vindicated. Thus, the interests of the individual diverged from those of the class after judgment in the district court. That is not true here. All members of the *Underwood* class are still in the same position. Second, the "inadequate representation" of the class by the individual in *Gonzales* was the failure to appeal the district court's decision. Whereas an appeal is "a significant element in the judicial process," *Gonzales v. Cassidy, supra,* 474 F.2d at 76, the failure to pursue a variation in the claim for relief does not fall within the same category.

One of the four prerequisites for any class action is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The district court found that the test of adequate representation had not been met because the class representatives in *Underwood* did not seek, after the Stay Order had issued, "an injunction against assessment of rent increases" from Judge Pratt. It reasoned that such relief could not easily have been sought without breaking up the class, since it "would necessarily depend upon a balancing of the equities on an individualized basis between tenants in each eligible housing project and their landlords throughout the country." *Haas v. Harris, supra,* 436 F.Supp. at 282. The court then inconsistently went on to find:

> This failure to seek on their behalf the only means of relief available after the Supreme Court's stay of Judge Pratt's nationwide relief deprived plaintiffs in these cases of the vigorous representation to which they are entitled and leaves them free to seek the relief in the instant action that could have been sought in *Underwood.*

*Haas v. Harris, supra,* 436 F.Supp. at 282.

The district court's theory that the Stay Order somehow altered or reversed the judgment in *Underwood* so as to free the plaintiffs for another go at the Secretary is not correct. The case simply stands still until the Supreme Court decides in which direction it is to proceed. The *Underwood* class is in the same position as if the Court of Appeals had issued a stay of the district court's order pending appeal.

The plaintiff class won a complete victory in the district court in *Underwood.* To find that plaintiffs had a duty, after the Stay Order, to return to the district court and press another theory is hardly consonant

with the strictures of our judicial hierarchy. The reasons for the Stay Order are apparent. As the district court noted, there are two other cases involving the same issues in which certiorari has been granted, *Abrams v. Hills,* 547 F.2d 1062 (9th Cir. 1976), cert. granted sub nom. *Harris v. Abrams,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977); *Ross v. Community Services, Inc.,* 405 F.Supp. 831 (D.Md.1975), aff'd 544 F.2d 514 (4th Cir. 1976), cert. granted sub nom. *Harris v. Ross,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977).

In a recent case brought by owners of a lower income housing project against the Secretary seeking additional subsidies to offset increased utilities costs, we stated in approving the denial of a preliminary injunction by the District Court of Massachusetts:

> It was entirely proper for the court to defer, as several other district courts have done, to the message implicit in the Supreme Court's stay of judgment in *Underwood*: i. e., that court-ordered payment of operating subsidies should be halted until the Secretary's duty under the law is clarified.

*Taunton Gardens Company v. Carla Hills et al.,* 557 F.2d 877, 878 (1st Cir. 1977).

The Secretary's duty, under the law, has now been clarified. Sections 236(f)(3) and (g) of the Act were amended in 1977 so as to make it mandatory on the Secretary to make subsidy payments "to the project owner in an amount up to the amount by which the sum of the cost of utilities and local property taxes exceeds the initial operating expense level." Since, however, these payments are to be made to the extent that there is money in the reserve fund or appropriated by Congress for this purpose, there has been no immediate relief. The present situation, as succinctly por-

Lewis v. Philip Morris, Inc., 419 F.Supp. 345, 353 (E.D.Va.1976), held that the failure to enter an order to all class members so that they could champion their own interests was a violation of the due process clause and that the doctrine of res judicata did not apply to the instant plaintiffs because they were not parties in a meaningful sense to the original class ac-

tion. No one has claimed that that is the situation here. The byzantine labyrinths of the effect of res judicata and collateral estoppel in class actions are explored in 87 Harv.L.Rev. 589 (1974); Collateral Attack on the Binding Effect of Class Judgments; the note does not, even remotely, support appellees' position.

trayed in oral argument, is that the prior Secretary refused to make the payments, the present Secretary is willing, but does not have the funds to do so. While it may be of small comfort to the tenants and landlords caught in the inflationary spiral of rising costs and rents, the amendment does indicate that Congress is fully cognizant of the problem. In any event, the legal question involved in *Underwood, viz.*, whether the payments were mandatory or discretionary with the Secretary, seems to some extent to have been solved by the congressional action.

The course of action urged by the appellees and found by the court below as necessary for full and adequate representation of the class amounts to a circumvention of a mandate of the Supreme Court. These plaintiffs cannot break ranks while the rest of the class is marking time.

There is another reason militating against the relief granted by the district court. In *Hahn v. Gottlieb*, 430 F.2d 1243 (1st Cir. 1970), which involved rent increases for a federally subsidized housing project, we held, after a detailed analysis, "that the approval of rents and charges is a 'matter committed to agency discretion by law', and thus not subject to judicial review." *Id.* at 1251. The district court acknowledged this holding to be generally sound, but found it did not apply to this case citing the following language in *Hahn*: "In so holding, we do not reach the question whether courts may intervene in those rare cases where the FHA has ignored a plain statutory duty, exceeded its jurisdiction, or committed constitutional error." *Id.* at 1251. The attempt of the district court to bring this case within the above language must fail. Whether, before the 1977 amendments, there was a plain statutory duty on the part of HUD to deny a rent increase in these circumstances is, by virtue of the Supreme Court stay in *Underwood*, as yet unresolved. It has not been established that HUD or the Secretary exceeded their jurisdiction or committed constitutional error.

*The order of the district court is reversed.*