Pedro GONZALES et al., Plaintiffs-Appellants,

v.

Clifton W. CASSIDY, Jr., et al., Defendants-Appellees,

John Richard Hayes, III, et al., Plaintiffs-Intervenors-Appellants.

No. 71-3344.

United States Court of Appeals, Fifth Circuit.

Feb. 15, 1973.

William L. Garrett, Edward W. Dunbar, Andrew Monson, Dallas, Tex., for plaintiffs-appellants.

Crawford C. Martin, Atty. Gen., Jay Floyd, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before DYER, Circuit Judge, SKELTON, Judge,* and INGRAHAM, Circuit Judge.

INGRAHAM, Circuit Judge:

The question in this appeal is whether plaintiff-appellant Gonzales and the class he seeks to represent are bound by the res judicata effect of a prior class suit [1] involving the same class (represented by a different named plaintiff), the same defendants and the same issues. We agree with Gonzales that the class was inadequately represented when the class representative in the prior suit failed to appeal from the trial court's judgment. We reverse and remand.

The prior suit began in May 1969. Antonio Gaytan filed suit as a class action against Clifton Cassidy, Chairman of the Texas Department of Public Safety, in the United States District Court for the Western District of Texas, seeking a declaratory judgment that the Texas Safety Responsibility Act [2] was unconstitutional and an injunction against its enforcement. Gaytan, an uninsured motorist, had been involved in an automobile accident in Texas, and pursuant to §§ 4, 5(a), 5(b) and 7 of the Act [3] his driver's license and the

---

\* Hon. Byron G. Skelton, of the U. S. Court of Claims, sitting by designation.

1. Gaytan v. Cassidy, 317 F.Supp. 46 (W. D.Tex., 1970) (Three-judge court). The decision was subsequently vacated by the Supreme Court, 403 U.S. 902, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971), and reversed on remand, Gaytan v. Cassidy, No. SA69CA153 (W.D.Tex., June 30, 1971, amended August 19, 1971).

2. Tex.Rev.Civ.Stat.Ann., Art. 6701h (1969).

3. The text of these sections as they existed at the time of the suit was as follows:

Sec. 4. The operator of every motor vehicle which is in any manner involved in an accident within the State, in which any person is killed or injured or in which damage to the property of any one person, including himself, to an apparent extent of at least One Hundred Dollars ($100) is sustained, shall within ten (10) days after such accident report the matter in writing to the Department. Such report, the form of which shall be prescribed by the Department, shall contain information to enable the Department to determine whether the requirements for the deposit of security under Section 5 are inapplicable by reason of the existence of insurance or other exceptions specified in this Act. Any written report of accident in accordance with Section 44, Chapter 421, Acts of the Fiftieth Legislature, Regular Session, 1947, as last amended by Chapter 363, Acts of the Fifty-third Legislature, Regular Session, 1953, compiled as Article 6701d, Section 44, Vernon's Texas Civil Statutes, if actually made to the Department, shall be sufficient provided it also contains the information required herein. The Department may rely upon the accuracy of the information unless and until it has reason to believe that the information is erroneous. If such operator be physically incapable of making such report, the owner of the motor vehicle involved in such accident shall, within ten (10) days after learning of the accident, make such report. The operator or the owner shall furnish such additional relevant information as the Department shall require.

Security; determination of amount; suspension of license and registrations; notice; exceptions

registration receipt on his vehicle were suspended without a hearing on liability or fault because he did not post security —as required by the Act—for the damages claimed by the adverse party. A three-judge court was convened, 28 U.S.C., §§ 2281 and 2284, and denied Gaytan and his class any relief by its holding that the Act was constitutional.[4] On direct appeal to the Supreme Court, 28 U.

Sec. 5. (a) If twenty (20) days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death, or damage to the property of any one person of at least One Hundred Dollars ($100), the Department does not have on file evidence satisfactory to it that the person. who would otherwise be required to file security under Subsection (b) of this Section has been released from liability, or has been finally adjudicated not to be liable, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments with respect to all claims for injuries or damages resulting from the accident, the Department shall determine the amount of security which shall be sufficient in its judgment, and in no event less than Two Hundred Dollars ($200) to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against each operator or owner.

(b) The Department shall, within sixty (60) days after the receipt of such report of a motor vehicle accident, suspend the license and all registrations of each operator and owner of a motor vehicle in any manner involved in such accident, and if such operator or owner is a nonresident the privilege of operating a motor vehicle within this State, and the privilege of the use within this State of any motor vehicle owned by him unless such operator, owner or operator and owner shall deposit security in the sum so determined by the Department and in no event less than Two Hundred Dollars ($200), and unless such operator and owner shall give proof of financial responsibility; provided notice of such suspension shall be sent by the Department to such operator and owner not less than ten (10) days prior to the effective date of such suspension and shall state the amount required as security and the necessity for proof of financial responsibility. Where erroneous information is given the Department with respect to the matters set forth in subdivisions 1, 2 and 3 of Subsection (c) of this Section, it shall take appropriate action as hereinbefore provided, within sixty (60) days after receipt by it of correct information with respect to said matters.

Duration of suspension

Sec. 7. The license and registration and nonresident's operating privilege suspended as provided in Section 5 shall remain so suspended and shall not be renewed nor shall any such license or registration be issued to such person until:

1. Such person shall deposit and file or there shall be deposited and filed on his behalf the security and proof required under Section 5 and under this Section; or

2. Two (2) years shall have elapsed following the date of such accident and evidence satisfactory to the Department has been filed with it that during such period no action for damages arising out of the accident has been instituted, provided such person files proof of financial responsibility; or

3. Evidence satisfactory to the Department has been filed with it of a release from liability, or a final adjudication of nonliability, or a duly acknowledged written agreement, in accordance with subdivision 4 of Section 6; provided, however, in the event there shall be any default in the payment of any installment under any duly acknowledged written agreement, then, upon notice of such default, the Department shall forthwith suspend the license and registration or nonresident's operating privilege of such person defaulting which shall not be restored unless and until

(a) Such person deposits and thereafter maintains security as required under Section 5 in such amount as the Department may then determine and files proof of financial responsibility; or

(b) Two (2) years shall have elapsed following the date when such security was required and during such period no action upon such agreement has been instituted in a court in this State, provided such person gives proof of financial responsibility.

4. 317 F.Supp., at 49. The court relied on Gillaspie v. Department of Public Safety, Tex., 259 S.W.2d 177 (1953), cert. den., 347 U.S. 933, 74 S.Ct. 625,

S.C. § 1253, the district court's judgment was vacated, and the case was remanded for reconsideration in light of Bell v. Burson, 402 U.S. 535, 96 S.Ct. 1586, 29 L.Ed.2d 90 (1971), which was decided after the three-judge court's decision.

In *Bell* the Supreme Court held the Georgia Motor Vehicle Safety Responsibility Act unconstitutional as violative of procedural due process.[5] The Georgia Act, like the Texas statute under attack in *Gaytan*, provided that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident would be suspended unless the motorist posted security for the amount of damages claimed by an aggrieved party, but did not provide for a hearing on liability or fault prior to the suspension.

On remand the three-judge court accordingly held the Texas Act unconstitu-

tional. But, regarding the scope of relief to which Gaytan and his class were entitled, the court held:

"This order shall apply retroactively to the Plaintiff ANTONIO R. GAYTAN, and prospectively from June 30, 1971, to all members of the class represented by said Plaintiff." [6]

Having obtained full relief for himself, Gaytan did not appeal the court's denial of retroactive relief to the other members of his class.

The present action began in the Northern District of Texas on June 24, 1971, after the Supreme Court vacated the first *Gaytan* decision, but before the case was heard on remand. Pedro Gonzales filed a class action against Cassidy, the defendant in *Gaytan*, seeking the same relief as had been sought by Gaytan in his suit.[7] On July 1, 1971, the *Gonzales* court entered a temporary restraining order in favor of Gonzales and

---

98 L.Ed. 1084, in which the Texas Supreme Court upheld the Act under a similar constitutional attack.

5. Writing for a unanimous court, Mr. Justice Brennan declared:

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. [Citations omitted]. This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'" [Citations omitted.]

402 U.S. at 539, 91 S.Ct. at 1589. He continued:

"[D]ue process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." [Citations omitted]. Id. at 542, 91 S.Ct. at 1591.

6. Gaytan v. Cassidy, No. SA69CA153 (W.D.Tex., June 30, 1971, amended August 19, 1971). The amended order clarified the original order by explaining

that it granted relief only to those persons whose effective date of suspension occurred after June 30, 1971, and to Gaytan whose suspensions occurred prior to June 30.

7. On appeal appellants assert that because "some of the motorists in this cause . . . were only the registered owners of automobiles which were driven by someone else at the time of the respective accidents," their claims are not typical to those of Gaytan in that he was the driver of his vehicle. This contention approaches the frivolous for, although Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," it is obvious that this is a distinction without a difference and appellants offer no reason why this distinction would prevent Gaytan from representing their interests. Gaytan was typical of the class within the meaning of Rule 23(a)(3) because he did not have interests which conflicted with those of the class, and because his claims for relief were based on the same legal or remedial theory as the appellants in the case at bar. *See* Katz v. Carte Blanche Corp., 52 F.R.D. 510 (W.D.Pa., 1971); Mersay v. First Rep. Corp. of America, 43 F.R.D. 465 (S.D. N.Y., 1968); 7 C. Wright and A. Miller, Federal Practice and Procedure, § 1764 at 614 (1972) [hereinafter cited as Wright and Miller].

the other named plaintiffs in his action, prohibiting the defendant from suspending their licenses and vehicle registration receipts. This was before the amended order in *Gaytan* was rendered but only one day after the first order denying retroactive relief to all of the class except Gaytan was entered. On August 19, 1971, the *Gaytan* court entered its amended and final order. Then on August 25, 1971, the *Gonzales* court ordered a show cause hearing as to why its temporary restraining order of July 1 should not be made permanent. This hearing was held on September 28 and the court reasoned that, because Gayton v. Cassidy was a class action and because Gonzales and the class he sought to represent were members of the *Gaytan* class, the principles of res judicata foreclosed their claims.[8] Gonzales appeals claiming that Gaytan's failure to appeal the final three-judge order in Gaytan v. Cassidy rendered his representation of the class inadequate, therefore precluding res judicata from attaching to that judgment.

■ To answer the question whether the class representative adequately represented the class so that the judgment in the class suit will bind the absent members of the class requires a two-pronged inquiry: (1) Did the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) Does it appear, after the termination of the suit, that the class representative adequately protected the interest of the class? The first question involves us in a collateral review of the *Gaytan* trial court's determination to permit the suit to proceed as a class ac-

tion with Gaytan as the representative, while the second involves a review of the class representative's conduct of the entire suit—an inquiry which is not required to be made by the trial court but which is appropriate in a collateral attack on the judgment such as we have here. Our discussion will treat each question separately.

The starting point in a trial court's determination to allow a suit to proceed as a class action is Rule 23(a) of the Federal Rules of Civil Procedure, which provides the prerequisites to a class action as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ The primary contention in this appeal is that Gaytan did not meet the requirements of 23(a)(4).[9] Remembering that at this point we are only concerned with the court's initial determination that Gaytan would be an adequate representative, we look to the criteria on which the decision should be based. There are two: (1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel.[10] We have little difficulty in

---

8. Since Gonzales and the other named plaintiffs fell within the group to whom only prospective relief had been granted by the *Gaytan* court, in that their licenses had been suspended prior to June 30, 1971, they were denied relief by the application of res judicata. Plaintiff Louanner H. Edwards was granted relief, for the reason that his license had not been suspended prior to June 30. At this time the court also denied the re-

quest that the Gonzales suit be maintained as a class action.

9. We rejected appellants' assertion that Gaytan's claims were not typical of the class within the meaning of 23(a)(3) in note 7, *supra*.

10. *See* Epstein v. Weiss, 50 F.R.D. 387 (E.D.La., 1970); Herbst v. Able, 47 F. R.D. 11 (S.D.N.Y., 1969); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.,

concluding that Antonio Gaytan met both of these requirements when he filed his suit in May of 1969. He was an uninsured motorist as were the members of his class; he had an automobile accident in Texas and had failed to post the necessary security under the Act as had the members of his class; his license and registration receipt were suspended without a hearing on liability or fault just as occurred to the members of his class. Likewise, he had the same basic interests in not having his license suspended or in having the suspension revoked as did the other members of his class. It is clear then that Gaytan had common interests which coincided with those of the class he sought to represent. Furthermore, there are no allegations that Gaytan's attorney was not fully qualified to handle the case, or that, initially at least, he would not vigorously prosecute the action. The fact that Gaytan's counsel appealed to the Supreme Court after the three-judge court's adverse decision and subsequently won a reversal of that decision points significantly to counsel's qualification to handle the litigation. Therefore we cannot refuse to give res judicata effect to the judgment in Gaytan v. Cassidy on the basis that the trial court in that case erroneously determined that Gaytan would be an adequate representative of the class.

The second question is whether Gaytan's conduct of the entire suit was such that due process would not be violated by giving res judicata effect to the judgment in that suit.[11] This is the crucial issue when the judgment in a class action is under collateral attack. Our first step, however, is to examine subdivisions (b) and (c) of Rule 23 in order to establish the proper context in which to make this inquiry.

Subdivision (b) of Rule 23 provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only indi-

---

1968).; Mersay v. First Rep. Corp. of America, 43 F.R.D. 465 (S.D.N.Y.1968). *See, generally*, 3B J. Moore, Federal Practice, ¶ 2302–.07 (2d Ed. 1969). [hereinafter cited as Moore]; Wright and Miller, § 1765. In Eisen v. Carlisle and Jacquelin, 391 F.2d 555, 562 (2nd Cir., 1968), the court also noted:

"[A]n essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class."

11. This question necessarily requires a hindsight approach to the issue of adequate representation, and in no way reflects on the *Gaytan* court's conclusion that Gaytan would adequately represent the class.

vidual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Gaytan v. Cassidy obviously fits within (b)(2)—thus, to be specific, we are dealing with the res judicata effect of the judgment in a (b)(2) type of class action.[12] Subdivision (c)(3) provides: "The judgment in an action maintained as a class action under subdivision . . . (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class . . . ." Although the *Gaytan* court's opinion, neither originally nor on remand, describes the class it considered Gaytan to be representing, we agree with the lower court here that Gonzales and the class he seeks to represent were members of the *Gaytan* class and would at first blush appear bound by the *Gaytan* decision. But our inquiry into the binding effect of *Gaytan* does not end with Rule 23 for, "al-

though thus declaring that the judgment in a class action includes the class, as defined, subdivision (c)(3) does not disturb the recognized principle that the court conducting the action cannot predetermine the res judicata effect of the judgment; this can be tested only in subsequent action. *See* Restatement, Judgments § 86, comment (h), § 116 (1942)." Advisory Committee's Notes to Rule 23 F.R.C.P., 28 U.S.C.A. at 301; Moore ¶ 23.60 at 1203. As a general rule though, a judgment in a class action will bind the absent members of the class.[13] The exception to this general rule is grounded in due process. Due process of law would be violated for the judgment in a class suit to be res judicata to the absent members of a class unless the court applying res judicata can conclude that the class was adequately represented in the first suit. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1942). *See* Sam Fox Publishing Co. v. United States, 366 U.S. 683, 691, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961); Dierks v. Thompson, 414 F.2d 453 (1st Cir., 1969); Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2nd Cir., 1968); Mersay v. First Rep. Corp. of America, 43 F.R.D. 465 (S.D.N.Y., 1968).

The 1966 amendments to Rule 23 eliminated the distinctions between true, hybrid and spurious class actions and the differing res judicata effect of each type of action, thus broadening the effect of res judicata under the amended rule.[14] It follows then that a court—wheth-

---

12. One distinction between members of a class in a (b)(1), (b)(2), or (b)(3), action is that absent (b)(1) and (b)(2) members do not have the privilege of opting out of the suit that is accorded to class members in a (b)(3) suit. *See* Research Corp. v. Asgrow Seed Co., 425 F.2d 1059 (9th Cir., 1970); Smith v. Alleghany Corp., 394 F.2d 381 (2nd Cir., 1968).; Moore, ¶ 23.60 at 1202. Also, the mandatory notice requirements of 23(c)(2). do not apply to (b)(1) and (b).(2) actions even though the discretionary notice provisions of (d)(2) are applicable. As a result of these distinctions class members in (b)(1) and (b)

(2) actions must necessarily rely on the representative to protect their interests.

13. *See, e. g.* Calagaz v. Calhoun, 309 F.2d 248 (5th Cir., 1962), in which the court noted that the theory of a class action is that all members of the class are before the court in person of their representative and. can, therefore, be justly bound by the court's decree. The court concluded, however, with the reminder that for the class to be bound it must be adequately represented.

14. *See generally*, Moore, ¶¶ 23.01, 23.07 [1], 23.60, and App. 23.08.11.

er it be the trial court making its initial 23(a)(4) determination, or a subsequent court considering a collateral attack on the judgment in a class action—must stringently apply the requirement of adequate representation.[15] Judge Frankel has noted:

> "There are, of course, some obvious limitations in any case upon the extent to which absent parties will be concluded. For one thing, as the Advisory Committee observed, such parties have a clear right in some later litigation to attack the judgment which purports to bind them. In such a later case, at least the basic considerations going to the fairness of holding them bound will be open for reexamination. Factors which were not brought to the attention of the first court—including, most centrally, the adequacy of representation in the first suit; [citing Hansberry v. Lee, supra]—may lead to a changed perspective."

M. Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39 (1967). And, as Justice Harlan observed: "The judgment in a class action will bind only those members of the class whose interests have been adequately represented by existing parties to the litigation." Sam Fox Publishing Co. v. United States, *supra*, 366 U.S. at 691, 81 S.Ct. at 1314. Our inquiry then into the adequacy of class representation for purposes of res judicata is made with the understanding that generally the class will be bound unless the party attacking the judgment can show that the class was inadequately represented.

■ What standards should determine whether Gaytan adequately repre-

sented the class in Gaytan v. Cassidy? In Mersay v. First Republic Corp. of America, *supra*, the trial court was making the 23(a)(4) determination of whether the named plaintiff would adequately represent the class when it said, "the primary criterion is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class, so as to insure them due process." Id. 43 F.R.D. at 470. This precept is equally applicable to the determination which must be made by a court when a class action judgment is under collateral attack. We hold that the primary criterion for determining whether the class representative has adequately represented his class for purposes of res judicata is whether the representative, through qualified counsel, vigorously and tenaciously protected the interests of the class. A court must view the representative's conduct of the entire litigation with this criterion as its guidepost.

■ We have previously recognized that Gaytan's representation was more than adequate up to the time the three-judge court entered its final order on remand. The narrow question, therefore, is whether Gaytan's failure to appeal this order, which denied retroactive relief to all members of the class except Gaytan, constitutes inadequate representation of the class so that they are not bound by the judgment. We are compelled to hold that Gaytan's failure to prosecute an appeal on behalf of the other members of his class rendered his representation of them inadequate. For this reason, the judgment in Gaytan v. Cassidy cannot be res judicata to the class.[16]

---

15. *See, e. g.,* Eisen v. Carlisle and Jacquelin, *supra*, 391 F.2d at 562, in which Judge Medina stated: "[A]s a result of the sweeping changes in Rule 23, a court must now carefully scrutinize the adequacy of representation in all class actions." Hohmann v. Packard Inst., 43 F.R.D. 192, 196 (N.D.Ill, 1967), rev'd on other grounds 399 F.2d 711 (7 Cir., 1968) (adequacy of representation should

be considered more stringently under the amended rule); Fischer v. Kletz, 41 F.R.D. 377, 382 (S.D.N.Y., 1966) (question of adequate representation has become considerably more significant under amended Rule 23).

16. This conclusion does not mean, either explicitly or implicitly, that the *Gaytan* court erred when it denied retroactive

Gaytan, through his attorney, vigorously represented the class until he obtained individual relief. The problem is that he was representing approximately 150,000 persons, who, although having had their licenses and registration receipts suspended without due process, were denied any relief by the three-judge court's prospective only application of its decision. So long as an appeal from this decision could not be characterized as patently meritless or frivolous, Gaytan should have prosecuted an appeal. Otherwise, it cannot be said that he vigorously and tenaciously protected the interests of the class he was purporting to represent, or that all members of the class had been afforded due process of law by having a full day in court. It is axiomatic that an appeal is a significant element in the judicial process. Gaytan's failure to prosecute an appeal deprived the members of his class, whose rights were not vindicated by the three-judge court's decision, of full participation in this process.

■ Appellees do not meet the argument that Gaytan's failure to appeal rendered him an inadequate representative of the class. Instead, they advance an estoppel-type argument to support the proposition that Gonzales cannot raise the inadequate representation issue. Their position is that since counsel for Gonzales was aware that on remand the *Gaytan* court denied retroactive relief by his June 30, 1971 order, and finally denied such relief in its amended order of August 19, Gonzales is estopped to attack the judgment collaterally because he should have intervened in *Gaytan* for the purposes of appeal. We reject this contention.

■ First, as the 1966 amendments to Rule 23 clearly illustrate, the purpose of a class action is to allow as few as one member of a class to prosecute an action for the benefit of the class if the requirements of 23(a) and (b) are met. This is one reason why the requirement of 23(a)(4) is stringently applied.[17] The purpose of Rule 23 would be subverted by requiring a class member who learns of a pending suit involving a class of which he is a part to monitor that litigation to make certain that his interests are being protected; this is not his responsibility—it is the responsibility of the class representative to protect the interests of all class members.

■ ■Secondly, it would simply be inequitable to foreclose Gonzales from attacking the *Gaytan* judgment on the facts of our case. The *Gaytan* court rendered its initial order on remand denying retroactive application of its decision that the Texas Act was unconstitutional on June 30, 1971. The *Gonzales* court, nevertheless, entered a temporary restraining order on July 1, 1971, prohibiting the defendants in *Gonzales* (which are the same as those in *Gaytan*) from suspending plaintiffs-appellants' licenses or registration receipts. Thereafter, a motion was filed in *Gaytan* for clarification of the court's order. This motion was granted and on August 19, 1971, the *Gaytan* court issued an amended order giving relief only to the named plaintiff Gaytan and to those persons whose effective date of suspension occurred after June 30, 1971. Thus, there was not a final appealable judgment in *Gaytan* until August 19. Meanwhile, the *Gonzales* court's temporary restraining order remained in effect throughout this period of time. On August 28, 1971, the *Gonzales* court entered an order to show cause why its temporary restraining order should not be made permanent and set a hearing for September 28, 1971. By September 28th it was already too late for Gonzales to intervene for the purpose of prosecuting an appeal in *Gaytan*. Nevertheless, the *Gonzales* court held that *Gaytan* was res judicata to plaintiffs-appellants' claims. The

application of its decision, and our conclusion should not be read as questioning that decision.

17. *See* note 15, *supra.*

only remedy then available to Gonzales was to appeal the court's decision to apply res judicata.

While some attorneys might have possessed the omniscience to have begun seeking intervention in *Gaytan* after that court's June 30th decision, we cannot fault counsel here for not doing so when one day later they obtained the relief which they were seeking in another court.[18] Also, inasmuch as the *Gaytan* decision on remand was subsequently amended during the time the temporary restraining order was in effect, we cannot say that counsel should have sought intervention during this time. Nor is counsel to be faulted for not seeking intervention after August 19, 1971. The *Gonzales* court shortly thereafter ordered a hearing as to why the temporary restraining order should not be made permanent. To require counsel to have sought intervention in *Gaytan* while awaiting the hearing in *Gonzales* would require too much. In these circumstances the application of res judicata cannot be sustained.

On remand there will be at least two issues. The first will be whether this action may be maintained as a class action. The district court denied Gonzales's motion to allow this suit to proceed as a class action. In light of our decision and for reasons of judicial economy, we think the district court should reexamine this decision, and if it concludes that Gonzales meets the prerequisites of 23(a) and (b), it would seem appropriate to allow a class action. The second issue will be the retroactivity question.[19] We express no views on the resolution of this issue.

Reversed and remanded.

---

18. The problems encountered by counsel here are illustrative of the problems encountered by lawyers, trial courts and appellate courts when two or more (b)(1) or (b),(2) class actions are proceeding simultaneously in the federal courts. Perhaps a partial solution will be found in the provisions dealing with multidistrict litigation, 28 U.S.C. § 1407.

In Texas, which has four federal districts with divisions within each district, it is particularly important for district courts to be aware of what other courts are doing and to coordinate their efforts where possible. In this regard the courts might consider adopting a procedure whereby the clerk's office in the respective districts or divisions would circulate a list briefly summarizing the (b)(1) and (b)(2) class actions then pending.

19. The Supreme Court's recent decision in Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), may furnish some guidance to the district court.