Diane COLBY, on her own behalf and on behalf of a class of all other persons similarly situated, Plaintiff,

v.

J.C. PENNEY COMPANY, INC., a Delaware corporation, Defendant.

No. 80 C 2032.

United States District Court, N.D. Illinois, E.D.

Jan. 31, 1989.

Robert F. Coleman, Kenneth P. Ross, Robert F. Coleman & Associates, Chicago, Ill., for plaintiff.

Wise & Marsac by Robert A. Marsac and Eric H. Lipsitt, Detroit, Mich. (P. Kevin Connelly, Lederer, Reich, Sheldon & Connelly, Chicago, Ill., of counsel), for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case is one in which this court must employ stern measures to protect the interests of an inadequately represented class. This court's action comes on the heels of a motion for summary judgment by J.C. Penney Company, a motion that makes this court wonder if Penney's attorneys have read Rule 56, Fed.R.Civ.P. The attorneys for the plaintiff class in turn have responded to the motion in seeming ignorance of what it takes to avoid summary judgment.

Many of the facts and most of the procedural history of this case appears in *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119 (7th Cir.1987). Since that decision, Penney amended its affirmative defenses to add one defense under the Bennett Amendment to Title VII, codified at 42 U.S.C. § 2000e–2(h) (1982). It then moved for summary judgment on the class's Second Amended Complaint; the class filed a Third Amended Complaint in response. That complaint alleges that Penney's medical and dental plans violate Title VII because the plans' "head-of-household" rule treats men and women disparately, or at least has a disparate impact upon women.

Penney's present motion essentially repeats the arguments that Penney presented before the Seventh Circuit in *Colby*. There are some differences, of course: when the Seventh Circuit was reviewing Judge Parsons' decision in this case, the Sixth Circuit had not completed its review of *E.E.O.C. v. J.C. Penney Co., Inc.*, 632 F.Supp. 871 (E.D.Mich.1985). Judge Parsons relied on the Michigan district court's decision; Penney wants this court to rely on the Sixth Circuit's view of *E.E.O.C.* as presented in *E.E.O.C. v. J.C. Penney Co.,*

*Inc.*, 843 F.2d 249 (6th Cir.1988). Penney also avoids using the term "stare decisis" in urging the court to follow the Sixth Circuit in *E.E.O.C.* and the Ninth Circuit in *Wambheim v. J.C. Penney Co., Inc.*, 705 F.2d 1492 (9th Cir.1983). Instead, Penney asks this court to give these decisions "most respectful consideration," contending that they are "highly persuasive" and are owed a "heightened degree of deference."

Penney does little more than this, and therein lies part of this court's difficulty with this motion. As the Seventh Circuit noted before remanding this case to this court, were this court merely to cite to *E.E.O.C.* and *Wambheim*, but not analyze their merits, this court would not discharge its judicial responsibilities. Penney expends little effort to explain why this court should follow *E.E.O.C.* and *Wambheim*. It provides plenty of arguments as to why it would be silly for this court to ignore those decisions, and it plaintively asserts that were this court to disagree with them, Penney would face "irreconcilable and inconsistent obligations." But Rule 56(c), Fed. R.Civ.P., says nothing about a party's right to summary judgment to avoid possibly inconsistent obligations. Rather, the rule provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[1]

The grist for the court on a motion for summary judgment are undisputed facts and issues of law. Both parties pay a great deal of attention to a few specific (sometimes irrelevant) points of law, but give secondary consideration to (or even ignore outright) facts. Penney at least has filed a statement of undisputed facts in compliance with this court's Local Rule

---

1. Indeed, were it not for Penney's having answered the Third Amended Complaint and labelling its papers "Motion for Summary Judgment," this court would not be able to ascertain what Penney wants. It consistently asks the court to dismiss the class's complaint, not render judgment in Penney's favor.

12(e), but the company fails to reference either these facts or supporting affidavits in its legal argument. This puts the court in the position of having to match Penney's facts with the relevant, albeit unargued, law.

These errors pale in comparison to those of the attorneys representing the class. In opposition to Penney's motion, these attorneys filed a ten-page brief. They devoted five pages to telling the court what the Seventh Circuit made abundantly clear in *Colby: E.E.O.C.* and *Wambheim* are not stare decisis on the class's claims. They then spent nearly four pages more demonstrating that the Bennett Amendment issues in this case are open ones in this Circuit, and suggesting "[p]erhaps by the time this case goes to trial, either the Supreme Court or the Seventh Circuit will have definitely resolved" some of them. See Plaintiff's Brief in Opposition, 7. In the last page the class moves for sanctions under Rule 11, accusing Penney's motion of not being well-grounded or properly motivated. What is missing from the brief, however, is any argument as to how this court should resolve unsettled issues of law, or *any challenge to Penney's facts.*

 In ordinary adversary proceedings, the court would hold the parties to their attorney's mistakes. But this case is not ordinary: this is a class action proceeding under Rule 23, Fed.R.Civ.P. The court in class actions has the duty to insure that the interests of absent class members are fairly represented. This stems from the nature of class litigation, which makes res judicata for all members of the class the judgment rendered in the case. Given this, it would be a denial of due process for this court to enter judgment while leaving the interests of the absent members unprotected. See *Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 118–119, 85 L.Ed. 22 (1940). The court's duty to protect the class lasts throughout the conduct of the case. See *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (modification of class certification order appropriate to insure "actual, not presumed,

conformance with Rule 23(a)"); *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir.1986) (court's duty to insure compliance with Rule 23(a) continues even after certification); *Eggleston v. Chicago Journeymen Plumbers, Etc.*, 657 F.2d 890, 896 (7th Cir.1981) (court may act to change a previously certified class if later events prove original certification was improvident); *Johnson v. Shreveport Garment Co.*, 422 F.Supp. 526 (W.D.La.1976), aff'd, 577 F.2d 1132 (5th Cir.1978) (court's obligation to examine adequacy of representation of class persists until judgment on merits rendered).

Rule 23(a) sets forth four prerequisites before persons can sue as class representatives. The most important of these prerequisites is the fourth, that "the representative parties will fairly and adequately protect the interests of the class." The court in *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968), listed as "an essential concomitant of adequate representation ... that the party's attorney be qualified, experienced, and generally able to conduct the proposed litigation." Judge Stagg in *Johnson*, 422 F.Supp. at 535, perceptively observed:

> As *Eisen* [ ], *Johnson* [v. *Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir.1969) ], and *Gonzales* [v. *Cassidy*, 474 F.2d 67 (5th Cir.1973) ] insinuate, usually the degree of representation by the named party will be coextensive with the preparation and presentation of the named party's attorney. Moreover, by qualified counsel the cases mean something more than an attorney admitted to practice before the particular federal court hearing the case. Counsel must have sufficient experience and training to satisfy the trial court that he or she will be a strenuous advocate for the class. Counsel need not come to court with a resume and character references with which to prove his effectiveness; rather, his or her conduct in pretrial matters, discovery and the trial itself will be evidence of his or her capability adequately to represent the class.

In *Johnson*, the court determined that the plaintiff's counsel did not fairly or adequately represent the class after having observed the counsel through trial. The court was thus able to consider the counsel's performance in pretrial matters, which was good; discovery, where counsel "failed" the class; and at trial, where counsel performed poorly, meagerly, and inadequately. See *Johnson*, 422 F.Supp. at 536–41. The court need not wait for repeated demonstrations of ineffectiveness, however, in order to determine that counsel has not met the standards of Rule 23(a)—especially when one error will irreparably harm the interests of the class. See, for example, *Gonzales*, 474 F.2d at 74–77 (representative's failure to appeal judgment that disadvantaged some of the members of the class indicates his representation was inadequate). Such is the type of failure presented by the class's attorney on this motion. See Rule 56(e) ("If the adverse party does not ... respond [to the moving party's uncontested facts], summary judgment, if appropriate, *shall be entered* against the adverse party.") (emphasis added).

■ The court is thus left with a choice. It could choose to rule on the merits of Penney's motion, and leave it to any member of the class who feels aggrieved by this court's decision to challenge its res judicata effect elsewhere. See, for example, *Gonzales*, 474 F.2d at 67 (second class representative challenged adequacy of representation in first class action in refuting later claim of res judicata). The court also could decertify this class and rule on the merits of Penney's motion to as Diane Colby, the class's current representative. The Seventh Circuit prefers the latter route in Title VII cases. See *Ekanem v. Health & Hosp. Corp. of Marion Cty., Ind.*, 724 F.2d 563, 573 (7th Cir.1983). This court thus decertifies the class which Colby represents, and now proceeds to the merits of Penney's motion for summary judgment.

As mentioned earlier, Colby presents her claim for Title VII relief under two theories of discrimination: disparate treatment and disparate impact. See Third Amended Complaint, ¶¶ 19–22. Penney attacks both theories. Penney contends first that Colby's disparate treatment claims fail because of the Bennett Amendment. As the Supreme Court noted in *County of Washington v. Gunther*, 452 U.S. 161, 170–71, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981), Congress adopted the Bennett Amendment to permit Title VII defendants to raise affirmative defenses previously allowed under the Equal Pay Act, 29 U.S.C. § 206(d)(1) (1982), in Title VII actions. Thus, by resting its motion for summary judgment on Colby's disparate treatment claims solely upon the affirmative defenses allowed under the Bennett Amendment, Penney concedes for purposes of this motion that Colby can make out a prima facie case of disparate treatment.

Does the Bennett Amendment provide Penney with an affirmative defense to Colby's claims of disparate treatment? The Amendment states:

> It shall not be an unlawful employment practice ... for any employer to differentiate upon the basis of sex in determining the amount of wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29.

42 U.S.C. § 2000e-2(h). Section 206(d) of Title 29 reads, in pertinent part:

> No employer ... shall discriminate, within any establishment in which [his or her] employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

Penney argues that it uses its head-of-household rule, and not the gender of its employees, to determine eligibility for its medical and dental plans. Penney thus submits that since health insurance and other fringe benefits are "compensation" under the Bennett Amendment, it can invoke the fourth defense of the Equal Pay Act. Since the Amendment's defenses are affirmative ones, Penney bears the burden of proof. See *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974) (employer bears burden of proof on Equal Pay Act defenses under § 206(d)).

Colby does not contest the assertion that Penney's medical and dental plans are "compensation" for purposes of the Amendment. The Sixth Circuit in *E.E.O.C.* held that they were, citing to *Newport News Shipbuilding & Dry Dock v. EEOC*, 462 U.S. 669, 682, 103 S.Ct. 2622, 2630, 77 L.Ed.2d 89 (1983). See *E.E.O.C.*, 843 F.2d at 252 n. 2. The Sixth Circuit may have reached this conclusion hastily: what *Newport News* actually held was that "health insurance and other fringe benefits are 'compensation, terms, conditions, or privileges of employment' " under 42 U.S.C. § 2000e–2(a)(1). *Newport News*, 462 U.S. at 682, 103 S.Ct. at 2630. Health benefits thus could be a privilege of employment, without being compensation. See *Arizona Governing Committee v. Norris*, 463 U.S. 1073, 1079, 103 S.Ct. 3492, 3496, 77 L.Ed.2d 1236 (1983) (opportunity to participate in a deferred compensation plan a "condition or privilege of employment," while retirement benefits are "compensation"). If health benefits were not compensation, then an employer could not claim a defense under the Bennett Amendment for discriminatory provision of them.

■ But this is of no moment: Penney argues that it "compensates" its employees under its plans, and Colby does not deny this, so this court will assume that Pen-

ney's plans constitute compensation for purposes of the Bennett Amendment. This court thus must determine whether Penney's head-of-household rule is a "differential based on any other factor other than sex." The Sixth Circuit held in *E.E.O.C.* that the words "any other factor" did not mean literally *any* other factor. Instead, the court qualified the defense: an employer has to show that he or she adopted the factor for a legitimate business reason. The Sixth Circuit stated that its own precedents lead to this holding, but implied that the Seventh Circuit took the language of the defense literally. See *E.E.O.C.*, 843 F.2d at 253.

That is not so. In *Covington v. Southern Illinois University*, 816 F.2d 317 (7th Cir.1987), the Seventh Circuit had the task of applying the "any other factor other than sex" defense to a case involving claims of discrimination brought under both the Equal Pay Act and Title VII.[2] Plaintiff Covington contended that her employer paid her less than a male for equal work. Her employer rebutted the charge by claiming, among other things, that it based the male worker's salary on his seniority, his greater education, and a policy of maintaining an employee's salary upon a change of assignment (the employee previously held a higher-paying job with the employer). The employer claimed that these were factors other than sex within the meaning of the Equal Pay Act and Title VII. *Id.* at 321.

On appeal, Covington contended that the Equal Pay Act and Title VII limited the "any other factor" defense to factors that were either business-related or tailored to the demands of the job. The court rejected Covington's latter interpretation of the defense, holding instead that the Equal Pay Act does not "preclude[ ] an employer from carrying out a policy which ... has in no way been shown to undermine the goals of the [Equal Pay Act]." The court elabo-

---

**2.** The court had expressly avoided this task in the two cases which the Sixth Circuit cited in *E.E.O.C.*, 843 F.2d at 253: *Colby*, 811 F.2d at 1127 ("we ... leave it to the district judge to decide whether Penney should be ... allowed to revive its defense based on the [Bennett

A]mendment"), and *American Nurses' Ass'n. v. State of Ill.*, 783 F.2d 716, 722–23 (7th Cir.1986) (Bennett Amendment probably would have barred plaintiffs from claiming disparate impact under the facts of the case; plaintiffs claimed disparate treatment instead).

rated on what it meant by "undermining" the goals of the Act, describing it as discriminatory application of an otherwise defensible policy or "evidence independent of the policy which establishes that the employer discriminates on the basis of sex." The court then examined the district court's findings as to the reasons for the employer's policies, thus implying that the question of the real reasons for a policy is a factual one. *Id.* at 321–25.

The Seventh Circuit's analysis of the "any other factor" defense in *Covington* is akin to that of the Sixth Circuit in *E.E.O.C.* For an employer to claim the fourth defense of the Bennett Amendment in a Title VII case, the employer must prove that he or she relied on the factor for a legitimate business reason. Qualifying the fourth defense in this manner makes it fit more comfortably within the overall framework of Title VII litigation. In the standard disparate treatment case, the plaintiff has the initial burden of establishing a prima facie case of discrimination. The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action taken against the plaintiff. The plaintiff then has the opportunity to demonstrate that the employer's stated reason is a pretext. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ The fourth defense of the Bennett Amendment as qualified above fits neatly into this structure. In fact, the only effect of claiming the fourth defense is a heightened burden on the employer. Under the *McDonnell Douglas* scheme, it is the plaintiff who bears the burden of demonstrating that the employer has discriminated. If the employer articulates a legitimate, nondiscriminatory reason for his or her decision, the plaintiff must overcome the employer's stated reason if the plaintiff is to prevail. See *id.* 450 U.S. at 254–56, 101 S.Ct. at 1094 (once employer articulates reason, the plaintiff's burden of production "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination"). As noted above, however, an employer who wishes to claim any defense under the Bennett Amendment bears the burden of proof of the defense. Thus, rather than leaving it to the plaintiff to overcome the employer's articulated reason, the employer who claims the fourth defense of the Bennett Amendment assumes the burden of showing that his or her reason for using a particular factor was legitimate.[3]

That an employer may end up having to prove more than is otherwise necessary by claiming the fourth defense of the Bennett Amendment should not come as a surprise. When the Supreme Court in *Gunther* held that the Bennett Amendment was a "technical amendment" designed to make defenses under Title VII congruent with those of the Equal Pay Act, it recognized that fitting the two statutes together would be difficult. Indeed, the court sidestepped the question of exactly how the fourth defense of the Bennett Amendment would fit into Title VII litigation. See *Gunther*, 452 U.S. at 166 n. 8, 170, 101 S.Ct. at 2246 n. 8, 2248. Although Congress did not anticipate how the Bennett Amendment would influence the conduct of Title VII litigation, it is this court's responsibility to ameliorate inconsistencies between statutes so as to make both work. This court's qualification of the fourth defense of the Bennett Amendment achieves that goal.

■ Penney carries its burden of proof on the Bennett Amendment defense, albeit by the barest of margins. Penney has submitted the affidavit of R.T. Messinger, who at the time of his affidavit was Penney's Manager of Benefits. Messinger swears that the primary purpose of Pen-

---

3. This does not prevent the employer from forcing the plaintiff to bear the plaintiff's burden of proof. If the plaintiff cannot prove that the employer discriminated, the plaintiff will lose his or her case. Here, Penney admits for purposes of this motion that it "discriminates," but goes further to say that it is not liable for this discrimination because of the Bennett Amendment.

ney's plans "is to provide benefits for as many Penney associates as possible." He states that the head-of-household rule "helps Penney achieve the purpose of its Plans" by restricting coverage to those "who are dependent upon the associate." Messinger Affidavit, ¶¶ 28–29.

■ This testimony is sketchy. One could argue that it is self-contradicting: if Penney aims to give insurance to as many associates as possible, why limit coverage at all? Reduced to its simplest form, however, Penney contends that its head-of-household rule enables Penney to cover as many employees as possible. Penney does not elaborate how, as it did in *E.E.O.C.*, 632 F.Supp. at 873–76. There Penney's officers testified that the rule helped Penney achieve its goal of insuring as many of its employees as possible within Penney's limited resources. This court of course cannot take judicial notice of the facts introduced in litigation not between the same parties for the purposes of a summary judgment motion. See Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 10A Federal Practice and Procedure 2d § 2723 (1983). But Colby's complete failure to oppose Penney's factual assertion as to the legitimacy of its head-of-household rule makes it unnecessary for this court to look anywhere else for support of Penney's contention. Because Colby fails to challenge Penney's statement of uncontested facts—as Rule 56(e) and Local Rule 12(f) require—this court must accept Penney's given reason as is. This court thus must grant judgment to Penney on Colby's disparate treatment claims, as the Bennett Amendment exempts Penney's practice.[4]

■ The court now turns to Colby's disparate impact claims. Penney presents three arguments as to why this court should grant it summary judgment on these too. The first is that Colby cannot uphold her burden of proof in showing that the head-of-household rule discriminates against women in violation of Title VII by virtue of its impact.[5] The first step in a disparate impact case is the plaintiff's: he or she must establish that the challenged practice has a significantly discriminatory impact. See *Connecticut v. Teal*, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982); *Colby*, 811 F.2d at 1126. Penney does not assert that Colby cannot establish that the head-of-household rule has a significantly discriminatory impact upon women—indeed, in one of the cases Penney so earnestly presses upon this court, the court held that a class of women could demonstrate the significant discriminatory impact of Penney's same rule. See *Wambheim*, 705 F.2d at 1495. This court will thus construe Penney's silence on the matter against it for purposes of this motion. See Wright, Miller, and Kane, 10A Federal Practice and Procedure 2d at § 2727.

Once the plaintiff has made out a prima facie case of disparate impact, the burden shifts to the employer to justify his or her practice. The Seventh Circuit held in *Colby* that Penney could rebut Colby's prima facie case "by showing a good business justification" for the head-of-household rule. *Colby*, 811 F.2d at 127. It noted approvingly the justification analysis of the court in *Wambheim*, which required Penney to "demonstrate that legitimate and overriding business considerations" support the rule. *Wambheim*, 705 F.2d at

---

**4.** One can appreciate the magnitude of Colby's failure by looking at *E.E.O.C.*. In the district court, the Equal Employment Opportunity Commission was able to survive summary judgment by raising a question of pretext in response to Penney's stated justifications for its rule. It was only after a trial that the court concluded that Penney's articulated reasons were legitimate and non-discriminatory. See *E.E.O.C.*, 632 F.Supp. at 872–77. This court stood ready to entertain similar arguments as to pretext from Colby. Considering it was her class which successfully reversed Judge Parson's decision to

follow *E.E.O.C.*, it is ironic that Colby has frittered away her opportunity to litigate these issues here and now.

**5.** Penney does not present this argument in so many words. Rather, it urges the court to follow the reasoning of the Ninth Circuit in *Wambheim*. There the court held that the plaintiffs could not prevail against Penney as they could not overcome Penney's stated justification for the head-of-household rule. See *Wambheim*, 705 F.2d at 1495–96.

1495, quoting *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1303 (9th Cir.1982).

Penney's bare-bones justification for its rule was presented above: it allows Penney to provide medical and dental insurance to as many of its employees as possible. And, as noted above, Colby has not opposed this stated justification with facts. This court will thus accept Penney's justification and take the third step in disparate impact analysis: examining whether the class can show that Penney's practice is "a mere pretext for discrimination," *Teal*, 457 U.S. at 447, 102 S.Ct. at 2530–31, or whether Penney has other means of serving its legitimate interests "without a similar discriminatory effect," *Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977). Colby has introduced no facts suggesting that Penney's head-of-household rule is pretextual or that Penney has less discriminatory means of achieving its purposes. Since all of the facts are thus undisputed, Colby's disparate impact claims are ripe for summary judgment. See *Washington v. Elec. Joint Apprenticeship & Tr. Com.*, 845 F.2d 710, 714 (7th Cir.1988) (once parties' burdens of production are met and undisputed facts before the court, Title VII disparate impact cases properly resolved on summary judgment motion).

This court concurs with the holding of the court in *Wambheim* that Penney's head-of-household rule does not violate Title VII. While Penney has not introduced the evidence that it introduced before the trial court in *Wambheim* as to how exactly the rule meets Penney's goals, see *Wambheim*, 705 F.2d at 1495, Colby has chosen not to deny Penney's testimony as to how the rule operates. It would not have taken much for Colby to avoid summary judgment here—she would have needed only to introduce evidence denying that the head-of-household rule serves Penney's stated purposes, that the rule is a pretext, or that Penney could achieve its purposes in less discriminatory ways—but Colby has not done so. Penney is thus entitled to summary judgment on Colby's disparate impact claims.

■ Colby's failure to dispute Penney's facts also results in summary judgment for Penney by virtue of the fourth defense of the Bennett Amendment. That defense has fewer effects upon disparate impact cases, as the employer's burden in responding to a plaintiff's prima facie case of disparate impact is greater than in disparate treatment cases: the employer must "show" he or she had a good business justification for the practice in disparate impact cases, while he or she need only "articulate" these reasons in disparate treatment litigation. Still, just as in disparate treatment cases, the plaintiff bears the burden of proof in disparate impact cases; by contrast, the Equal Pay Act defenses incorporated into Title VII by the Bennett Amendment place the burden of proof on the employer. Nevertheless, Colby has chosen not to dispute Penney's facts in support of its claim of the fourth Bennett Amendment defense. Holding Colby to her choice, this court must enter summary judgment in favor of Penney on Colby's disparate impact claims on this ground too.[6]

In the third sentence of its brief in opposition to Penney's motion, the class which Colby formerly represented states that the motion "is a complete waste of everyone's time and should be denied." The court agrees that Penney spent too much time on this motion trying to disguise arguments which the Seventh Circuit rejected in *Colby*. Penney also has put forth arguments that are barely substantial (and barely substantiated) as to why it deserves summary judgment here, now, in this case. But in the end it is only Colby who has wasted her time. She has preferred to ignore the limited substance of Penney's arguments and has forfeited her opportunity to challenge Penney's sketchy facts. Still, facts are facts, and the law is the law, and Colby has lost this chance to save her claims. For

---

**6.** In light of the alternative holdings on Colby's disparate impact claims, this court will not decide Penney's last attack on them, that she has not demonstrated a discriminatory animus in Penney's adoption of the head-of-household rule.

434

the reasons stated above, this court decertifies the class in this case. The court grants Penney's motion for summary judgment on all of Diane Colby's claims. The court further denies Colby's motion for sanctions.