**Tillie BAYLOR, et al., Plaintiffs,**

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.**

**Civ. A. No. 3–88–3065–R.**

United States District Court, N.D. Texas, Dallas Division.

Aug. 24, 1989.

Revised Sept. 22, 1989.

C. Victor Lander and Fred L. Lander, III, Lander and Associates, P.C., Dallas, Tex., for plaintiffs.

Joseph G. Werner, Haynes and Boone, Dallas, Tex., Gershon M. Ratner, Howard M. Schmeltzer and Jonathan Strong, Office of General Counsel, U.S. Dept. of H.U.D., Washington, D.C. and Marvin Collins, Jane E. Jackson and Mary Ann Moore, U.S. Attys., Dallas, Tex., for defendants.

### MEMORANDUM OPINION

BUCHMEYER, District Judge.

This case is directly related to *Walker v. United States Department of Housing and Urban Development*, CA 3–85–1210 (N.D. Tex.). The three companion opinions [1] issued in that case on August 4, 1989 are incorporated as part of this Memorandum Opinion.

1. The three opinions were "*Walker I:* DHA violations of the Consent Decree and Appointment of a Special Master"; "*Walker II:* The Frost Amendment and the Anti–Demolition Statute"; and "*Walker III:* Joinder of the City of Dallas as a Defendant Subject to the Consent Decree." They will be cited in this opinion as "*Walker I,*" "*Walker II*" and "*Walker III.*"

### 1. *The Procedural History*

This case was filed as the result of the suggestion of the Fifth Circuit in *Walker v. City of Mesquite*, 858 F.2d 1071 (5th Cir. 1988)—which was, despite the name of the defendant in the style, actually an appeal in the case which is the subject of this Court's opinions in *Walker I*, 734 F.Supp. 1231, *Walker II*, 734 F.Supp. 1272, and *Walker III*, 734 F.Supp. 1289.

After the approval of the Consent Decree in *Walker*, some of the plaintiffs in *this* case—most of whom appeared at the Dec. 12, 1986 fairness hearing to speak in opposition to the Decree—attempted an appeal.[2] The Fifth Circuit dismissed the appeal on the grounds that "a nonnamed class member of a certified class may not appeal the final judgment in a class action."[3] However, in doing so, the Fifth Circuit stated:

"An additional method of collateral attack available to individual, nonnamed class members to protect their interests is the filing of a separate suit in the district court challenging the adequacy of class representation. *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir.1973). *We note in this regard that the filing of such a separate suit remains a viable option to the individual, nonnamed class members such as Baylor and Hogg in the instant action should such members question the adequacy of class representation." (858 F.2d at 1074)* (emphasis added).

This suit followed. However, it did not challenge "the adequacy of the class representation." Instead, it contends that HUD and DHA are prohibited from the demolition of any housing units at DHA's *West Dallas* project—in accordance with the Consent Decree—because of "the Frost Amendment." That amendment—passed as part of the 1988 HUD appropriations act: Pub.L. No. 100–202, 101 Stat. 1329–213—prohibited the use of federal funds for the demolition of public housing at *West Dallas*. See *Walker II*, pp. 1280–1281.

### 2. *The Frost Amendment*

■ The Frost Amendment is unconstitutional because it violates the principle of separation of powers. See *Walker II*, pp. 1275–1276, 1280–1281, 1282–1285. The plaintiffs' claims in this case are based solely upon the Frost Amendment.[4] Therefore, this case is DISMISSED.

### 3. *Class Representation*

■ Because of the Fifth Circuit's suggestion that a nonnamed class member could file a separate suit to "question the adequacy of class representation," this Court needs to make it clear that any such suit will be promptly dismissed—because, as this Court specifically held on Jan. 9, 1987 (when approval of the Consent Decree was announced in open court), the lawyers who represent the class[5] have provided truly outstanding representation to all members of the class:

"One of the factors that I must consider in approving a class settlement is the opinion of competent counsel. The Plaintiffs' attorneys—*Mike Daniel, Elizabeth Julian*—have credentials and integrity

---

**2.** Six months after the approval of the Consent Decree (Jan. 20, 1987), appellants Baylor and Hogg filed a motion to intervene in the *Walker* case. This Court denied the motion, and no appeal was taken from that order. *Walker*, 858 F.2d 1073.

**3.** But see *Baker v. Wade*, 769 F.2d 289 (5th Cir.1985) (nonnamed member of defendant class was permitted to appeal the final judgment in a class action—even though his motion to intervene was denied by the district court *and* even though no appeal was taken from that denial).

**4.** Some of the plaintiffs complain that they are being required to move to other apartments in West Dallas while the 800–900 units are being renovated under the Consent Decree. This states no basis for relief because—even if all 3500 units at West Dallas were renovated, as the plaintiffs wish (despite the total lack of funds to do this)—the plaintiffs would be required to move to other apartments at *West Dallas* during this massive renovation. See *Walker III*, pp. 1295–1297, 1307–1310, 1312–1313.

**5.** The class consists of "all black persons who are presently or who during the pendency of this Decree become either (a) residents of a DHA owned or managed project, or (b) participants in the DHA § 8 Existing Housing Program." (Consent Decree, 2).

that I don't need to tell you about. They are long-term fighters for the rights of poor people in this city. They are above reproach. There may be other lawyers in Dallas, who have done more for the poor people in this city than Mr. Daniel and Ms. Julian, but I will tell you it wouldn't take me very long to call the roll before I got to the names of Mr. Daniel and Ms. Julian on that list.

"The opinion of the Plaintiffs' attorneys is that they are. mindful, they are sensitive to the conflicting interests in this Settlement Agreement, and to the concern in developing remedies for the types of violations alleged in this case. They told me that the decision to recommend the compromise has involved very difficult choices for them, but choices made necessary because of the lack of money.

"They have proposed a compromise which offers every class member the opportunity for housing on a desegregated basis, an opportunity to expand the housing available to minorities in nonminority areas, a settlement which addresses the remnants of the discriminatory system which existed by trying to get modernization accomplished in West Dallas without further delay, a settlement which has remedies to correct the quality of the housing that has been available in the past to the poor, a settlement which establishes procedures to prevent failures like this on quality to happen in the future.

"And they offer me a settlement which, if it works, will increase the number of housing units available to low income families over the next three years. I do find that the proposed settlement is fair, that it is adequate, that it is reasonable to the class as a whole. And the Settlement Agreement will be approved." (Jan. 9, 1987 Transcript, pp. 22–23).

Indeed, anyone who take the time to read this Court's opinions in *Walker I, Walker II* and *Walker III* will see what an extraordinary job the plaintiffs' attorneys have done in representing *all* members of the class.[6] Indeed, any lawsuit which charges that "the representation of class members in the instant proceedings was inadequate" would be ludicrous.[7] See *Walker II,* pp. 1277–1278, 1285.

### Conclusion

For these reasons, this case is DISMISSED, and the plaintiffs' request for injunctive relief—based solely on the unconstitutional Frost Amendment—is DENIED.[8]

6. When the Consent Decree was approved, there were only 1917 families living at *West Dallas;* the rest of the 3500 apartments were vacant, and almost 1300 units had been boarded up for at least ten years because they were not fit for human occupancy. By June 30, 1989, there were only 1072 families at *West Dallas.* In contrast, there are over 7200 members of the *Walker* class. See *Walker III,* pp. 1295–1296.

7. In *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir. 1973)—which the Fifth Circuit cited in support of its suggestion for another lawsuit—the class representative, after receiving retroactive relief, simply failed to appeal an order which denied retroactive relief to other class members. (474 F.2d at 75). In this case, the interests of all class members—including those who wanted to remain at West Dallas (like the plaintiffs in this case)—were considered, carefully and painfully, both by the class attorneys and by this Court. See *Walker II,* pp. 1276–1281; *Walker III,* pp. 1307–1310, 1311–1313. And, anyone who reads the three *Walker* opinions can easily see that there is absolutely no similarity between the approval of the Consent Decree in this case and the selfish motivations of the class representative in *Gonzales.*

8. As explained in *Walker II,* some of the demolition at *West Dallas* is covered by the Anti–Demolition Statute, 42 U.S.C. § 1437p, and cannot be demolished "unless it is replaced by either § 8 certificates or other housing units which will be available for at least 15 years." *Walker II,* pp. 1275–1276, 1285–1288.